IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN HAMMONS et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 1:19cv2518 (FYP) (RMM) |
| ) | |
| **ISLAMIC REPUBLIC OF IRAN,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR DEFAULT JUDGMENT AS TO CONSOLIDATED PLAINTIFFS**

Noree Kamkongkaeo and James Duncan (collectively referred to herein as "Consolidated Plaintiffs") file this Memorandum in Support of their Motion for Default Judgment, ECF No. 23. And in support thereof, state as follows:

Consolidated Plaintiffs filed their Complaint on April 22, 2020 as a related matter to the present case. *See* Case No. 1:20cv1058, ECF No. 1-3. After service of the Complaint was completed on the Islamic Republic of Iran ("Iran") and the Clerk entered default, Consolidated Plaintiffs moved for consolidation with this case. *See* Case No. 1:20cv1058, ECF No. 15. On November 10, 2021, the Court granted that request and consolidated the matters. *See* Case No. 1:20cv1058, ECF No. 16.

Predating consolidation, a Motion for Default Judgment is currently pending as to forty-five of the original plaintiffs.[1] That Motion seeks entry of default on behalf of thirteen victims (and their families) regarding a January 4, 2014 terrorist attack in Kabul, Afghanistan. *See* ECF Nos. 19, 22. One of those victims is Ryan Hammons. Consolidated Plaintiffs are the family

---

[1] Ms. Kamkongkaeo was originally named in the *Hammons* case, but had to seek voluntary dismissal to resolve a pleadings issue. ECF No. 15. Another original plaintiff, Sheena Smith, was initially named in the pending Motion, but filed a voluntary dismissal on April 8, 2021. ECF No. 20. Finally, a Motion for Leave to Withdraw as Counsel is pending as to two of the remaining plaintiffs, Robert Hernandez and Jennifer Hernandez. ECF No. 21.

members of Mr. Hammons. Now that these cases are consolidated, Consolidated Plaintiffs seek to join the previously filed Motion for Default Judgment, *see* ECF No. 18, and request entry of an Order finding Iran liable on their clams.

The claims asserted by Consolidated Plaintiffs are identical to those advanced by the original plaintiffs in the prior Motion for Default Judgment in all but two respects: (1) the unique status of the Consolidated Plaintiffs as the functional equivalent of immediate family members; and (2) the common law cause of action asserted by Ms. Kamkongkaeo given that she is not an American citizen and therefore cannot bring a Section 1605A(c) claim. In all other respects, Consolidated Plaintiffs adopt and incorporate the claims, evidence, and arguments presented in support of the Motion for Default Judgment. *See* ECF Nos. 18–19, 22.

## I.     RELATIONSHIPS TO MR. HAMMONS

Anticipating the consolidation of these matters, the supplemental affidavit submitted by Mr. Hammons on April 8, 2021 contained the relevant sworn and uncontroverted testimony necessary to establish the unique essential elements of the Consolidated Plaintiffs' right to relief. *See* ECF No. 22-1.

Mr. Hammons indicated that Ms. Kamkongkaeo has resided with him "since 2010," predating the attack by about seven years. *Id.* at ¶ 5. Although they are not legally married, he indicated that for as long as they have lived with one another, he has considered her "the equivalent of my spouse in all aspects of our life together." *Id.* Mr. Hammons also described several ways in which Ms. Kamkongkaeo endured hardship as a result of his injuries.

Mr. Hammons identifies Mr. Duncan as his uncle, but more importantly, describes him as playing the role of his father figure "since the year 2000." *Id.* at ¶ 6. Mr. Duncan stepped into that role by allowing Mr. Hammons to live with him as a young adult, when no other family

member would, and by keeping up close communication throughout the last twenty years. *Id.* He also briefly describes the emotional challenge of these events for Mr. Duncan. *Id.*

Claims on behalf of the family members of terror victims are generally brought either under the solatium claims of Section 1605A(c) or through a common law cause of action for intentional infliction of emotional distress, two claims that are considered "indistinguishable." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010). Traditionally, these types of claims are reserved for immediate family members such as spouses, children, parents, and siblings. However, this definition can be expanded to include those who "were members of the victim's household such that they were viewed as the functional equivalents of family members." *Id.* at 79 (internal quotation marks omitted). In those situations, the "circumstances may require a slight stretching of the immediate-family requirement." *Est. of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 29 (D.D.C. 2009). Applying this test in prior cases, this Court has found various examples of cohabitating partners, half-siblings, grandparents, and non-adoptive stepparents meeting the "functional equivalent" standard. *See, e.g.*, *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 270 (D.D.C. 2002) (finding an unmarried partner the equivalent of a spouse); *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 28 (D.D.C. 2011) (finding a grandfather the equivalent of a father); *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 63 (D.D.C. 2018) (finding stepparents and half-siblings the equivalent of fully biological family members).

Here, the Consolidated Plaintiffs submit that the testimony offered through the uncontroverted sworn affidavit of Mr. Hammons is sufficient to establish Iran's liability on their claims. *See* ECF No. 22-1 at ¶¶ 5–6. Consolidated Plaintiffs thereby ask this Court to find for them as to liability, affording them the opportunity to present detailed evidence as to the length,

depth, and overall closeness of their relationships with Mr. Hammons during the damages phase of this case, either through live testimony or through detailed family member affidavits.

## II. COMMON LAW CLAIM FOR MS. KAMKONGKAEO

While Mr. Duncan, along with the rest of the original plaintiffs in this action, is free to pursue his claims pursuant to the federal cause of action laid out in Section 1605A(c), Ms. Kamkongkaeo cannot. One necessary element of a 1605A(c) claim is that the plaintiff must be affiliated with the United States, either as a citizen, a member of the armed forces, or as a government employee or contractor. *See* 28 U.S.C. § 1605A(c)(1)–(4). Ms. Kamkongkaeo is none of those things, so she must take a different route.

Historically, the FSIA was not interpreted to create a federal cause of action at all, but rather to operate as a "pass-through" for state law claims. *See Cicippio-Puelo v. Islamic Republic of Iran,* 353 F.3d 1024, 1033 (D.C. Cir. 2004); *Fritz,* 320 F. Supp. 3d at 89. The law was amended in 2008, however, to explicitly authorize the federal cause of action now enshrined in Section 1605A(c), but in doing so, Congress "did not upset the prior law permitting plaintiffs to assert state law claims after clearing the hurdle of foreign sovereign immunity." *Fritz,* 320 F. Supp. 3d at 89 (citing *Owens*, 864 F.3d 751, 807–09 (D.C. Cir. 2017)). Accordingly, Ms. Kamkongkaeo has pleaded a cause of action for Intentional Infliction of Emotional Distress. *See* Case No. 1:20cv1058, ECF No. 1 at ¶¶ 76–84.

### A. *The choice of law analysis leads to the application of D.C. law.*

When the federal cause of action is not available to a particular plaintiff, this Court must first determine what substantive law applies to the asserted state law claims. This determination is accomplished by applying the choice of law rules of the forum state. *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009). Our forum here, the District of Columbia,

blends a "governmental interest analysis" with a "most significant relationship test." *Fritz*, 320 F. Supp. 3d at 89 (quoting *Oveissi*, 573 F.3d at 842).

Under the governmental interest analysis, this Court should evaluate "the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Hercules & Co., Ltd. v. Shama Rest. Corp.,* 566 A.2d 31, 40–41 (D.C. 1989) (internal citations omitted). When multiple states claim an interest, as a general rule, the law of the forum should govern "unless the foreign state has a greater interest in the controversy." *Owens*, 826 F. Supp. 2d 128, 155–156 (D.D.C. 2011), *aff'd in part and vacated in part on other grounds*, 864 F.3d 751 (D.C. Cir. 2017). The "most significant relationship test" requires this Court to consider four factors set forth in the Restatement (Second) of Conflict of Laws: (1) "the place where the injury occurred;" (2) "the place where the conduct causing the injury occurred;" (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties;" and (4) "the place where the relationship, if any, between the parties is centered." *Oveissi*, 573 F.3d at 842 (quoting Restatement (Second) of Conflict of Laws § 145(2) (1971)).

Using these principles in similar cases, this Court has applied the substantive laws of the District of Columbia instead of the law where the injury occurred or the law where the plaintiffs reside. For example, in *Owens,* this Court applied D.C. law rather than the law of the countries where the U.S. embassy bombings at issue occurred, finding that the United States had a "unique interest" in having its domestic law apply in terrorism cases, especially those directed against American interests. *Owens*, 826 F. Supp. 2d at 155. There, this Court stated that "in light of the 2008 amendments to FSIA that seek to promote uniformity and extend access to U.S. federal courts to foreign national immediate family members of victims of terrorism, the law of the

5

forum state, the District of Columbia, should provide the rule of decision." *Id.* at 154–55; *see also Fritz*, 320 F. Supp. 3d at 90 (quoting the Restatement (Third) of Foreign Relations for the principle that a country has jurisdiction to dictate the laws applicable to conduct "directed against the security of the state").

As is the very nature of terrorist attacks, the bombing of Camp Sullivan specifically targeted American citizens and efforts in Afghanistan. Accordingly, the United States has a unique and compelling reason for its domestic law to apply. *See Fritz*, 320 F. Supp. 3d at 90. In the interests of uniformity and certainty, the law of the forum should govern these issues, and this Court should apply D.C. law to the claims raised herein.

### B. *D.C. law provides a viable cause of action for Ms. Kamkongkaeo*

District of Columbia law provides litigants a cause of action for intentional infliction of emotional distress that is the functional equivalent of the solatium claims available under 28 U.S.C. § 1605A. Ms. Kamkongkaeo presses that claim under Count II of the Complaint. To establish a prima facia case of intentional infliction of emotional distress under D.C. law, a plaintiff must establish: (1) extreme and outrageous conduct on the part of the defendant which, (2) either intentionally or recklessly, (3) caused the plaintiff to suffer severe emotional distress. *Larijani v. Georgetown Univ.,* 791 A.2d 41, 44 (D.C. 2002).

Acts of terrorism, "by their very definition," amount to extreme and outrageous conduct. *Valore*, 700 F. Supp. 2d at 77; *Mwila v. Islamic Republic of Iran,* 33 F. Supp. 3d 36, 40 (D.D.C. 2014). Iran's conduct in providing extensive material support to a terrorist organization was intentional and reckless, causing the attack against Mr. Hammons and resulting in Ms. Kamkongkaeo's severe emotional distress. Accordingly, the basic elements of this claim are met.

The only remaining potential barrier to Ms. Kamkongkaeo's right to recovery is the fact that she was not physically present for the attack, a fact that would generally be fatal to an emotional distress claim. In *Owens*, however, the United States Court of Appeals for the D.C. Circuit directly addressed the issue of whether terrorism plaintiffs, who were not present at the scene of a terrorist attack, could maintain a cause of action under the District of Columbia's framework of intentional infliction of emotional distress. Because D.C. had adopted the standard for intentional infliction of emotional distress set forth in the Restatement (Second) of Torts, Sudan argued on appeal that D.C. law necessarily incorporated the Restatement's "presence requirement." *Owens,* 864 F.3d at 810. But the D.C. Circuit noted that the Restatement left "open the possibility of situations in which presence at the time may not be required." *Id.*

The D.C. Circuit certified the issue to the D.C. Court of Appeals. *Id.* at 812. The D.C. Court of Appeals held that the family member of a person injured by a terrorist attack did not have to be present in order to have a claim for intentional infliction of emotional distress. *Republic of Sudan v. Owens,* 194 A.3d 38, 42 (D.C. 2018). The Court of Appeals reasoned that the policy considerations underlying the presence requirement were more than satisfied by the strict jurisdictional requirements of 28 U.S.C. § 1605A:

> Acts of terrorism are, by their very nature, designed "'to create maximum emotional impact,' particularly on third parties." . . . Therefore, when foreign states provide material support for terrorist attacks, it should come as no surprise that the acts they facilitated have caused severe emotional distress to persons who were not present at the time.
>
> Another purpose of the presence requirement is to increase the likelihood that only plaintiffs with "genuine" complaints of severe emotional distress can recover. *See* Restatement Second § 46 cmt. l. Yet, the risk of trivial or feigned claims is exceedingly low when the anguish derives from a terrorist attack that *killed or injured* a member of the plaintiff's *immediate family* . . . Consequently, in

7

>such circumstances, courts need not rigidly enforce the presence requirement to ward off disingenuous claims.

*Id.* at 43–44 (emphasis in original). Accordingly, Ms. Kamkongkaeo can maintain her claim for intentional infliction of emotional distress under D.C. law, despite the fact that she was not present at the time of the bombing.

### III. CONCLUSION

Based on the foregoing, as well as the facts, law, and argument contained in Plaintiffs' prior Memoranda, *see* ECF Nos. 19, 22, Consolidated Plaintiffs pray that the Court issue an Order GRANTING their Motion for Default Judgment against Iran as to liability and consolidating their claims with the other plaintiffs in this matter for the purpose of determining damages.

Dated: November 15, 2021                  Respectfully submitted,

/s/ Kevin A. Hoffman
Kevin A. Hoffman (DC Bar No. 1044559)
Randy D. Singer (DCD Bar No. VA0157)
SINGER DAVIS, LLC
1209A Laskin Road
Virginia Beach, VA 23451
Phone: (757) 301-9995
Fax: (757) 233-1084
Email: kevin.hoffman@singerdavis.law
Email: randy.singer@singerdavis.law
*Counsel for Plaintiffs*